FILED
2014 Oct-07  AM 10:04
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

ROBERT EARL GRAHAM,    )
    )
    Plaintiff,    )
    )
    v.    )    7:13-CV-1688-LSC
    )
CAROLYN W. COLVIN,    )
Acting Commissioner of    )
Social Security,    )
    )
    Defendant.    )

## MEMORANDUM OF OPINION

## I. Introduction

The plaintiff, Robert Earl Graham, appeals from the decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. Graham timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Mr. Graham was forty-eight years old at the time of the Administrative Law Judge's ("ALJ") decision. Although he repeated the tenth grade, Mr. Graham completed the eleventh grade and was not enrolled in any special education classes.

(Tr. at 169, 411.)  In the fifteen years before the alleged onset of his disability, Mr. Graham was employed as an ice packer in a fish processing plant.  (Tr. at 83, 170-71.) Mr. Graham claims that he became disabled on May 27, 2007, due to leg pain associated with poor circulation and seizures.  (Tr. at 64-65, 68-69.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA").  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments.  *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The decision depends on the medical evidence contained in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step.  *See id.* §§ 404.1520(e), 416.920(e).  The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work.  *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant

work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.; see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ determined that Mr. Graham was insured through the date of her decision. (Tr. at 35.) She further determined that Mr. Graham had not engaged in SGA since the alleged onset of his disability. (*Id.*) According to the ALJ, Mr. Graham's alcohol dependence, history of alcohol withdrawal seizures, discrete peripheral neuropathy (probably alcohol related), discrete cerebellar ataxia (alcohol related), anxiety and depression secondary to alcohol dependence, and history of varicose veins are considered "severe" based on the requirements set forth in the regulations. (Tr. at 35-36.) However, she found that Mr. Graham did not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  (Tr. at 36.)  The ALJ did not find Mr. Graham's allegations to be totally credible, and she determined that Mr. Graham has the RFC to perform light work with a sit/stand option but must refrain from climbing ladders, ropes, or scaffolds; kneeling and crawling, although he can perform occasional crouching; and must avoid exposure to unprotected heights and hazardous machinery.  (Tr. at 39-40.)

According to the ALJ, Mr. Graham is unable to perform any of his past relevant work.  (Tr. at 54.)  He is a "younger individual" with a "limited education," as those terms are defined by the regulations.  (Tr. at 55.)  The ALJ determined that transferability of skills was "not an issue" because Mr. Graham's past relevant work is unskilled.  (*Id.*)  Although the ALJ found that Mr. Graham did not have the RFC to perform the full range of light work, she nonetheless determined from testimony of a vocational expert that there are a significant number of jobs in the national economy that he is capable of performing, such as production assembly worker, auto packer, and garment sorter.  (*Id.*)  The ALJ concluded her findings by stating that Mr. Graham was not disabled.  (Tr. at 56.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  " The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' "  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520,

1529 (11th Cir. 1990)).

However, no decision is automatic, for " despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion

Mr. Graham alleges that the ALJ's decision should be reversed and remanded for three reasons. First, he asserts that the ALJ erred in rejecting the opinion of Dr. John Goff, who performed a psychological evaluation of Mr. Graham on September 27, 2011. (Doc. 10 at 1; *see also* Tr. at 434.) Second, Mr. Graham claims the ALJ erred in failing to find that he suffered from alcohol related persisting dementia, resulting in marked and extreme limitations. (Doc. 10 at 2.) Finally, Mr. Graham believes that the ALJ erred in concluding that he did not meet Listing 11.14. (*Id.*)

A. Opinion of Dr. Goff

Mr. Graham contends that the ALJ improperly rejected the opinion of Dr. John Goff by giving his conclusions " little weight" in her analysis. (Doc. 10 at 2; *see also*

Tr. at 52.)   Dr. Goff, a clinical neuropsychologist, performed a psychological evaluation of Mr. Graham on September 27, 2011, at the request of Mr. Graham's attorney.  (Tr. at 434.)  Dr. Goff acknowledges several times in his report that the purpose of his evaluation of Mr. Graham was for use in a disability determination. (Tr. at 435.)  Therefore, Dr. Goff is appropriately classified as a " nontreating source" under the regulations. *See* 20 C.F.R. §§ 404.1502, 416.902 (" We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability." ).  The opinion of Dr. Goff is thus not entitled to deferential " controlling weight" in the analysis. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Stone*, 544 F. App'x at 842 (" The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician." ) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).  Rather, the value of Dr. Goff's assessment is weighed by considering the following factors: (1) examining relationship, (2) treatment relationship, (3) supportability of medical evidence to the opinion, (4) consistency with the record as a whole, (5) specialization, and (6) other factors " which tend to support or contradict the opinion."   20 C.F.R. §§ 404.1527(c), 416.927(c); *see also*

*Stone*, 544 F. App'x at 842.

Mr. Graham argues that the ALJ "went to great lengths to . . . discredit Dr. Goff's opinion" and "provided no valid reason" for rejecting it. (Doc. 10 at 5, 8.) On the contrary, the decision by the ALJ reveals that she meticulously reviewed Dr. Goff's report, providing a summary of his findings (tr. at 46-47, 51-54), and properly used the above criteria to evaluate his opinion.  For example, the ALJ concluded that Dr. Goff's assertion that Mr. Graham was functionally illiterate and had a "marked" or "extreme" limitation in 13 out of the 17 measurable categories of mental work-related activity[1] was inconsistent with the record as a whole and the narrative part of Dr. Goff's report, directly invoking the fourth criterion.  (Tr. at 52; *see also* tr. at 440-41 (Medical Source Opinion ("MSO") form).)  The ALJ also found that Dr. Goff's opinion that Plaintiff was functionally illiterate was inconsistent with Plaintiff's school records and that Plaintiff's statement to Dr. Goff that he quit drinking (except for an occasional beer) was inconsistent with his testimony the he drank up to a fifth of whisky per day through November 2011.  (Tr. at 51-53.)

Plaintiff's primary challenge is to the ALJ's determination that Dr. Goff's

---

[1] For example, Dr. Goff opined that Plaintiff had a "marked" limitation to understand and carry out simple instructions, to respond appropriately to supervision, to use judgment in simple one or two step work-related decisions, and to deal with changes in a routine work setting. (Tr. at 440.)  Dr. Goff also found Plaintiff had an "extreme" limitation in maintaining attention, concentration, or pace for periods of at least 2 hours.  (*Id.*)

opinion that Plaintiff had "marked" limitations in the ability to understand and carry

out simple instructions and an "extreme" limitation in the ability to remember simple

instructions was inconsistent with the record as a whole.   In support for that

conclusion, the ALJ noted that Mr. Graham's sister " indicated . . . that [Mr. Graham]

followed written and spoken instructions very well" and that Mr. Graham himself

informed the Social Security representative that he could "read his forms and mail"

and did not need the forms read to him.  (Tr. at 52.)   The ALJ also noted that the

findings of two other medical professionals who evaluated Mr. Graham contradicted

Dr. Goff's opinion.  (*Id.*)  Dr. Donald Blanton, a psychologist who evaluated Mr.

Graham on July 21, 2010, noted that Mr. Graham was able to do calculations, list four

digits forward and three digits backward, and "was concrete in his interpretation of

similarities and proverbs."  (Tr. at 372; *see also* tr. at 52.)  Dr. Linda Duke, the state

agency psychological consultant, reported on her RFC assessment that Mr. Graham

"ha[d] the ability to understand, remember[,] and carry out short, simple

instruction[s]."  (Tr. at 394; *see also* tr. at 52.)  The ALJ conducted a similar analysis

for several other assertions made by Dr. Goff on the MSO form he completed for Mr.

Graham.  (Tr. at 52-54.)

     "The ALJ may reject the opinion of any physician if the evidence supports a

contrary conclusion." *Stone*, 544 F. App'x at 842 (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).  Here, the ALJ's lengthy discussion of Dr. Goff's opinion, as well as her reasoned justifications for according it little weight in her evaluation of Mr. Graham, demonstrates that the ALJ properly considered the evidence contained within the record and applied the appropriate legal standards from the regulations. The ALJ's findings, "if supported by substantial evidence, shall be conclusive." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (quoting 42 U.S.C. § 405(g)). "Th[is] Court will not disturb the Commissioner's decision if, in light of the record as a whole, it appears to be supported by substantial evidence." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  For these reasons, this Court holds that the ALJ did not err in according little weight to the opinion of Dr. John Goff.[2]

---

[2] Plaintiff also appears to take issue with the ALJ's citation to *King v. Apfel*, 2000 WL 284217 (S.D. Ala. Feb. 29, 2000), and the ALJ's use of quotations from that case to apply to Plaintiff's case, i.e.: "Goff's assessment of Plaintiff's abilities was so out of line with the balance of evidence that the ALJ found it lacking objective support" and "the truth is that everything else in the record is counter to the extreme findings of Goff." (*See* tr. at 53.)  Plaintiff argues that the ALJ was required to provide him the opinion in *King* for comment before citing to it in the decision.  The ALJ's use of *King* does not diminish the substantial evidence supporting the ALJ's determination that Dr. Goff's opinion was inconsistent with the record.  *King* is an unpublished district court decision, not evidence, and the ALJ was not required to proffer caselaw prior to issuing a decision.  A claimant's right to procedural due process is violated only when the Commissioner "den[ies] a claimant Social Security benefits based upon *post-hearing medical reports* without giving the claimant an opportunity to subpoena and cross-examine the authors of such reports."  *Demenech v. Sec'y of Health and Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (emphasis added); *see Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir.1985) ("Due process is violated when a claimant is denied the opportunity to subpoena and cross-examine those who submit medical reports").

B. Alcohol Related Persisting Dementia

Mr. Graham asserts that the ALJ improperly failed to find that he suffered from alcohol related persisting dementia. (Tr. at 9.) Specifically, it appears Mr. Graham takes issue with the fact that the ALJ did not find his alcohol related persisting dementia qualified as a "severe" impairment. (*Id.*) An impairment is classified as "severe" if it "significantly limit[s] [Mr. Graham's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). The burden is on Mr. Graham to prove that a given impairment meets the standard established in the regulations. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (superseded by statute on other grounds). "A diagnosis alone is an insufficient basis for a finding that an impairment is severe"; rather, the severity must be proven by objective medical evidence. *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002). Furthermore, Mr. Graham must demonstrate that his alleged impairment negatively impacts his ability to work. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

Dr. John Goff, the clinical neuropsychologist who conducted a psychological evaluation of Mr. Graham on September 27, 2011, diagnosed Mr. Graham with alcohol related persisting dementia. (Tr. at 439.) Although other health professionals who

examined or evaluated Mr. Graham diagnosed him with similar conditions related to his longtime alcohol abuse, Dr. Goff was the only source who found that Mr. Graham suffers specifically from alcohol related persisting dementia.  The ALJ acknowledged that Dr. Goff made this diagnosis (tr. at 47); however, she then proceeded to accord "little weight" to Dr. Goff's opinion for the reasons stated in Subpoint A, *supra.* Moreover, the ALJ did find that Mr. Graham had other similar alcohol-related mental impairments that satisfied the severity standard set out in the regulations, such as anxiety and depression secondary to alcohol dependence.  (Tr. at 35-36.)  Her determination to not include "alcohol related persisting dementia" among the list of Mr. Graham's severe impairments is reasonable given her assessment of Dr. Goff's opinion.

Nonetheless, even if the ALJ improperly failed to find that alcohol related persisting dementia was a severe impairment, any error to omit a severe impairment when others have been named is harmless.  *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010).  "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Id.* at 825.  This is because the third step in the sequential evaluation process requires the ALJ to consider all of Mr. Graham's impairments, both severe and non-severe, to determine

if they meet or medical equal a listed impairment.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also Heatly*, 382 F. App'x at 825.  The ALJ's extensive discussion of Mr. Graham's medical records plainly shows that she reviewed the documents contained within the file and considered Dr. Goff's diagnosis in determining Mr. Graham's severe impairments.  Therefore, this Court holds that the ALJ did not err in failing to include alcohol related persisting dementia among that list.

C. Listing 11.14

Mr. Graham contends that the ALJ improperly failed to find that he meets Listing 11.14 at step three of the sequential evaluation.  (Doc. 10 at 10.)  On the contrary, the ALJ specifically states that she gave "particular consideration" to that listing.  (Tr. at 37.)  Regardless, Listing 11.14 includes "peripheral neuropathies . . . with disorganization of motor function . . ., in spite of prescribed treatment."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.14.  "Disorganization of motor function" must be "significant and persistent . . . in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station."  *Id.* at Listing 11.04B.  "Persistent disorganization of motor function" is defined as "paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances .

. . which occur singly or in various combinations." *Id.* at Listing 11.00C. "The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." *Id.*

Mr. Graham must show that his impairment or combination of impairments satisfies all of the specified medical criteria for a given listing. *See Perkins v. Comm'r of Soc. Sec.*, 553 F. App'x 870, 872 (11th Cir. 2014). "[A]n impairment that fails to do so does not qualify no matter how severely it meets some of the criteria." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (superseded by statute on other grounds)). Furthermore, a diagnosis alone is not sufficient to establish that an impairment(s) meets a listing. 20 C.F.R. §§ 404.1525(d), 416.925(d). In order for an impairment or combination of impairments to medically equal a listing, the findings related to that impairment or combination of impairments must be "at least of equal medical significance" to the criteria of a listed impairment. 20 C.F.R. §§ 404.1526, 416.926. This decision rests with the ALJ. *Id.* at §§ 404.1526(a), 416.926(a).

The ALJ did not supply an explanation of her reasoning but stated that Mr. Graham's impairments did not meet or medically equal Listing 11.14 because the listing "require[s] specific signs, symptoms[,] and findings, which are not here present." (Tr. at 37.) This determination complies with the applicable legal standard

requiring the ALJ at step three of the sequential evaluation process to consider whether an impairment or combination of impairments meets or is medically equal to a listing. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The regulations do not require the ALJ to "mechanically recite the evidence" used in making her decision.  *See Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 870 (11th Cir. 2012) (quoting *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).

Additionally, the medically determinable evidence supports the ALJ's finding. Dr. Gary Walton, a general practitioner, treated Mr. Graham for peripheral neuropathy on several occasions in 2006 and 2007.  (Tr. at 320-37.)  Dr. Walton referred Mr. Graham to Dr. Daniel Potts, a neurologist, who also treated Mr. Graham in 2006 and 2007.  (Tr. at 345-55.)  Despite the diagnosis, both Dr. Walton and Dr. Potts reported in their treatment notes that Mr. Graham's gait was normal upon examination.  (Tr. at 329, 346, 348.)  Only once did Dr. Potts describe Mr. Graham's gait as "ataxic."  (Tr. at 354.)  Ataxia on a single occasion can hardly be described as the "persistent" disorganization of motor function required to meet the listing.  The ALJ also gave "significant weight" to the opinion of Dr. Alexandre Todorov, a clinical neurophysiologist who conducted a Physical Capacities Examination ("PCE") of Mr. Graham on June 30, 2011, and again on August 23, 2011.  (Tr. at 51; *see also* tr. at

397-406, 417-18, 424-29.)   Dr. Todorov characterized Mr. Graham's peripheral neuropathy as "severe" in his PCE but nonetheless determined that Mr. Graham "can do work related activities in a sitting, standing[,] or walking position."  (Tr. at 400, 418.)  He noted that upon examination, Mr. Graham was able to stand up, keep his balance with his eyes closed, and "squat and rise with no difficulties."  (Tr. at 399, 418.)  Dr. Todorov's findings signify a low "degree of interference with locomotion" consistent with the ALJ's determination that Mr. Graham's impairment or combination of impairments did not meet or medically equal a listing.  (Tr. at 37.)  The scant evidence that indicates the level of disorganization of motor function contemplated by the regulations is largely self-reported by Mr. Graham and is not corroborated by medical observations.  (E.g., Tr. at 67.)  Moreover, the ALJ determined that "numerous inconsistencies in the record" rendered Mr. Graham "less than credible."  (Tr. at 47.)

This Court's role in reviewing the decision of the ALJ is not to conduct its own factfinding analysis.  *See Dyer*, 395 F.3d at 1210; *see also supra* Part II.  The ALJ applied the correct legal standard by considering the listing (tr. at 37), and her decision that Mr. Graham's impairment or combination of impairments did not meet or medically equal it is supported by substantial evidence.  Therefore, this Court holds that the ALJ

did not err by failing to find that Mr. Graham meets Listing 11.14.

IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Graham's arguments, this Court finds that the ALJ's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 7th day of October 2014.

L. Scott Coogler
United States District Judge
[160704]